# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
February 6, 2014 Session

## STATE OF TENNESSEE v. BARRY H. HOGG

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Wilson County**
**No. 10-CR-57      David Earl Durham, Judge**

_____

**No. M2012-00303-SC-R11-CD - Filed September 25, 2014**

_____

The defendant was convicted of multiple counts of especially aggravated sexual exploitation of a minor, criminal exposure of another to the human immunodeficiency virus ("HIV"), and aggravated statutory rape.  The Court of Criminal Appeals affirmed the convictions.  Based on our review, we hold (1) there is sufficient evidence to support the separate convictions of especially aggravated sexual exploitation of a minor and aggravated statutory rape; (2) there is sufficient evidence to support the convictions for four counts of criminal exposure to HIV but insufficient evidence to support the convictions for three of the counts; and (3) the defendant's sentence, as modified, is not excessive.

### Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Affirmed in Part and Reversed in Part

SHARON G. LEE, J., delivered the opinion of the Court, in which GARY R. WADE, C.J., and JANICE M. HOLDER, CORNELIA A. CLARK, and WILLIAM C. KOCH, JR., JJ., joined.

Gregory D. Smith, Clarksville, Tennessee (on appeal); Adam W. Parrish, Lebanon, Tennessee (at trial); and Comer L. Donnell, District Public Defender, and William K. Cather, Assistant Public Defender, for the appellant, Barry H. Hogg.

Robert E. Cooper, Jr., Attorney General and Reporter; William E. Young, Solicitor General; Andrew C. Coulam, Assistant Attorney General; Tom P. Thompson, District Attorney General; and Thomas H. Swink and Javin R. Cripps, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**I.**

In November 2006, Barry H. Hogg ("Defendant") was diagnosed as being HIV-positive and having acquired immunodeficiency syndrome ("AIDS").[1] Defendant's doctor advised him that he could pass the virus to others through unprotected sexual activity. In 2009, when Defendant was forty-seven, he met a thirteen-year-old boy ("the victim"), and they began seeing each other frequently. On September 6, 2009, at an abandoned store in Wilson County, Defendant and the victim engaged in multiple sexual acts, including anal and oral sex. Defendant never told the victim that he was HIV-positive and had AIDS. Defendant recorded the sexual conduct with a video camera and later transferred the film clips onto his home computer.

On January 12, 2010, the Wilson County Grand Jury indicted Defendant on multiple counts of sexual misconduct and criminal exposure of another to HIV. On January 31, 2011, and February 1, 2011, Defendant was tried by a jury and convicted of eleven counts of especially aggravated sexual exploitation of a minor, Tenn. Code Ann. § 39-13-1005 (2010 & Supp. 2013), seven counts of criminal exposure of another to HIV, Tenn. Code Ann. § 39-13-109 (2010 & Supp. 2013), and six counts of aggravated statutory rape, Tenn. Code Ann. § 39-13-106(c) (2010).

At trial, five witnesses testified on behalf of the State: the victim, Detective Shannon Hunt, Officer Carlo Sguanci, Special Agent Melanie Garner, and Dr. Catherine McGowan. Defendant called no witnesses.

The victim testified that, between April and September 2009, he lived in Tennessee with his mother, stepfather, and brother. He met Defendant at his grandmother's house and saw him three or four times a week and once or twice on the weekend. He did not know Defendant was HIV-positive and had AIDS. For the victim's fourteenth birthday on August 31, 2009, Defendant drove him to Nashville and bought him a pocket-sized vagina, lubricant, and a bottle of Rush.[2]

---

[1] HIV weakens the immune system and causes AIDS. A person who is HIV-positive is capable of transmitting the virus to others through sexual contact. A person who is HIV-positive may or may not have AIDS, as "AIDS is the most advanced form of HIV disease." Aids.gov, http://aids.gov/hiv-aids-basics/just-diagnosed-with-hiv-aids/overview/hiv-positive/ (accessed April 17, 2014).

[2] The record indicates that Rush is a type of incense with a strong smell that when inhaled quickly gives a type of high.

The victim testified that on a later date, shown by the evidence to be September 6, 2009, Defendant gave him alcohol to drink and drove him to an abandoned store known as the Buckeye Corner Market. The victim described the various sexual acts that occurred, explaining, "There was oral sex, me and him both doing it to each other, anal with the finger, and anal, him on me, and – it was masturbating, me and him both, and digital." Defendant brought a video camera to the store and filmed the sexual acts.

Detective Hunt of the Smith County Sheriff's Department testified that on September 8, 2009, the Smith County Sheriff asked her to investigate the possible kidnapping of the victim. Detective Hunt interviewed the victim, who initially said Defendant tried to kidnap him. Later, the victim admitted that he had not been kidnapped but had engaged in sexual acts with Defendant at the Buckeye Corner Market. Detective Hunt then questioned Defendant, who admitted that he knew the victim and had driven him to Nashville to buy some sex toys. Defendant admitted to taking a few pictures of the victim, but claimed none of the pictures were sexual or obscene. Based on this information, Detective Hunt obtained a search warrant for Defendant's home and seized Defendant's computer and a video camera from his bedroom and another computer belonging to Defendant's mother from the living room.

Officer Sguanci, with the 15th Judicial District Drug and Violent Crime Task Force,[3] testified that he and Director Mike Thompson interviewed Defendant at the Smith County Sheriff's Department on September 9, 2009. Defendant gave the officers a written statement, which was introduced into evidence. The statement described Defendant's sexual acts with the victim, including the pictures and videos depicting this activity. This statement provided in part:

> Some of the pictures are of [the victim] going down on me. That is [the victim] performing oral sex on me. . . . In some videos taken later you will see him and me having anal intercourse. . . . [A]s you will see in the videos, they are real explicit. At this time, I performed anal on him and did not ejaculate. I performed oral sex on him, sucking his penis and licking his ass. This was a play date. It is not necessary for me to come. He did not come this time. We have had oral sex twice.

Special Agent Garner, with the Tennessee Bureau of Investigation, testified that she worked in the Technical Services Unit, which handles technology-facilitated crimes involving children. She had previously testified as an expert witness in many cases involving

---

[3] The 15th Judicial Drug and Violent Crime Task Force covers Jackson, Macon, Smith, Trousdale, and Wilson Counties.

children. Special Agent Garner used forensic software to analyze the hard drive from Defendant's computer and found videos on Defendant's computer that depicted sexual acts between Defendant and the victim. She prepared a computerized report that contained different video clips of the sexual acts between Defendant and the victim filmed on September 6, 2009, and transferred to Defendant's computer on September 8, 2009.

Eleven video clips taken from Defendant's computer were played to the jury. The victim testified that the videos were an accurate representation of what occurred at the store. The video clips, which ranged in length from four seconds to four minutes and two seconds, featured an assortment of sexual acts between Defendant and the victim. The video clips showed Defendant directing the victim to masturbate and pose in sexual positions. They also depicted Defendant performing unprotected anal intercourse on the victim, performing fellatio on the victim, and the victim performing fellatio on Defendant. Other video clips showed Defendant manually manipulating the victim's penis, digitally probing the victim's anus, and licking the victim's anus.

Dr. McGowan, an infectious disease specialist at Vanderbilt's Comprehensive Care Clinic, testified that in November 2006, she began treating Defendant, who was diagnosed with HIV and AIDS. She explained that HIV can be transmitted through different bodily fluids, including blood and genital secretions. She also testified that "[p]atients who have HIV have it for life." She said that one way to transmit HIV "is through very close contact with bodily fluids such as through sexual contact."

Dr. McGowan stated that HIV is transmitted through ejaculate and vaginal secretions and that there is some risk of transmission in any sexual encounter. According to her testimony, the risk of transmission is not dependent on ejaculation because the penis secretes mucosal or pre-ejaculate fluid capable of transmitting HIV. Dr. McGowan testified that the chances of HIV transmission can be evaluated by considering the type of sexual contact, the viral load of the infected person, and the presence and quantity of bodily fluid exchanged during sexual activity. Defendant, according to Dr. McGowan, was capable of exposing another person to HIV. The various sexual acts between Defendant and the victim presented different levels of risk, with penile/anal intercourse posing the greatest risk of HIV transmission. She explained that it would be risky for one of her HIV-positive patients to have sexual contact with others without a condom. Dr. McGowan explained that she had counseling sessions with Defendant and would have advised him, as she did all her patients, of the risk of passing the virus to others and of the importance of always using a form of protection with all sexual encounters.

At the end of the State's proof, the defense moved for a directed verdict, contending that the especially aggravated sexual exploitation of a minor and the aggravated statutory

rape counts were all based on a single sexual encounter. The defense also moved for dismissal of the criminal exposure counts, arguing that the State failed to prove a significant risk of HIV transmission. The trial judge denied the motions. The jury found Defendant guilty of all twenty-four counts.

On July 29, 2011, the trial judge, after considering mitigating factors under Tenn. Code Ann. § 40-35-113 (2010), and enhancement factors under Tenn. Code Ann. § 40-35-114 (2010 & Supp. 2013), sentenced Defendant to an effective sentence of 174 years. The trial judge considered Defendant's admission of the offense and cooperation with the police as mitigating factors under Tenn. Code Ann. § 40-35-113(13). The trial judge found the following enhancement factors were applicable under Tenn. Code Ann. § 40-35-114 (4), (7), (10), (7), & (21) : the offense involved a victim and was committed to gratify Defendant's desire for pleasure or excitement; the victim was particularly vulnerable because of his age; Defendant had no hesitation in committing a crime with high risk to human life; and Defendant committed aggravated statutory rape knowing he was HIV-positive.[4] The trial court reviewed the pre-sentence report, which contained the victim's impact statement. In the box for personal reaction, the victim wrote: "Made me feel different, shy, like I was a needle in a hay stack." In the box for physical injuries, the victim wrote: "Disap[p]ointment in my self, anger get's [sic] out of hand because of it. And a broke heart." For medical treatment, the victim explained that "I have to go see my doctor and have test[s] done to check for AIDS for the rest of my life." For mental injuries, the victim explained he suffered from "anger, stress, [and] images pop in my head of what happen[ed] that day."

The trial court imposed consecutive sentencing based on Tenn. Code Ann. § 40-35-115(b)(5) (2010), which provides for consecutive sentencing if a defendant is convicted of more than one statutory offense involving the sexual abuse of a minor. The trial court noted that the sexual acts "couldn't have been more graphic and gruesome" and characterized Defendant's actions as "abominable." Defendant's effective sentence of 174 years included: twelve years at one hundred percent incarceration for each of the eleven especially aggravated sexual exploitation convictions; six years at thirty percent for each of the seven criminal exposure of another to HIV convictions; and four years at thirty percent for each of the six aggravated statutory rape convictions. The sentences for especially aggravated sexual exploitation were to run consecutive to the sentences for the seven

---

[4] From our review of the record, it appears that subsection (4)—vulnerability due to age—was applied to the HIV exposure convictions; subsection (7)—gratifying Defendant's desire—was applied to all convictions; subsection (10)—high risk to human life—was applied to all convictions; subsection (21)—rape with knowledge of HIV—was applied to the aggravated statutory rape and sexual exploitation convictions.

convictions for criminal exposure of another to HIV and consecutive to each other. Defendant's aggravated statutory rape sentences were to run concurrently with one another and with all other counts.

Defendant appealed, and the Court of Criminal Appeals affirmed. *State v. Hogg*, No. M2012-00303-CCA-R3-CD, 2013 WL 1619392, at *8 (Tenn. Crim. App. Apr. 16, 2013). We granted Defendant's application for permission to appeal and consider these issues: (1) whether the evidence was sufficient to support the convictions for especially aggravated sexual exploitation of a minor, aggravated statutory rape, and criminal exposure of another to HIV; and (2) whether Defendant's sentence was excessive.

## II.

On the sufficiency of the evidence issue, Defendant first argues that the evidence was insufficient to support eleven separate convictions for especially aggravated sexual exploitation of a minor and six aggravated statutory rape convictions because the acts all arose out of one continuous sexual act. Second, Defendant argues that the evidence was insufficient to support his seven convictions for criminal exposure of another to HIV because his sexual acts with the victim did not pose a "significant risk" of HIV transmission.

When considering the sufficiency of the evidence, an appellate court must afford the State the strongest legitimate view of the evidence and draw all reasonable inferences in the State's favor. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). We defer to the trier of fact on questions concerning witness credibility, weight and value of evidence, and other factual issues raised by the evidence. *See Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966). The key issue is whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e). This standard applies whether the conviction was based upon direct or circumstantial evidence. *State v. Farmer*, 380 S.W.3d 96, 100 (Tenn. 2012) (citing *State v. Sutton*, 166 S.W.3d 686, 689 (Tenn. 2005)). When there is a verdict of guilty, the defendant on appeal bears the burden of showing that the evidence was legally insufficient to support the guilty verdict. *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

## A.

Defendant asserts that his multiple convictions for especially aggravated sexual exploitation of a minor and aggravated statutory rape are multiplicitous because all of the

sexual acts occurred in the same place during a one-hour time frame. He contends they constitute a single act and support only a single conviction for especially aggravated sexual exploitation of a minor and a single conviction for aggravated statutory rape. Multiplicity refers to the charging of a single offense in multiple counts of an indictment. *State v. Smith*, 436 S.W.3d__, No. M2011-00440-SC-R11-CD, 2014 WL 2766674, at *10 (Tenn. June 19, 2014) (citing *State v. Phillips*, 924 S.W.2d 662, 665 (Tenn. 1996)). By imposing multiple punishments for the same offense, multiplicity raises double jeopardy concerns. *State v. Watkins*, 362 S.W.3d 530, 542 (Tenn. 2012). Both the United States and Tennessee Constitutions protect individuals against double jeopardy arising from multiplicitous charges. U.S. Const. amend. V; Tenn. Const. art. I, § 10.

Multiple punishment claims fall into one of two categories: (1) unit-of-prosecution claims; or (2) multiple description claims. *Watkins*, 362 S.W.3d at 543. At issue here is a unit-of-prosecution claim which is raised when a defendant who has been convicted of multiple violations of the *same* statute asserts that the multiple convictions are for the same offense. *Smith*, 436 S.W.3d at *11 (citing *Watkins*, 362 S.W.3d at 543). We recently explained in *Smith* that "[i]n determining the unit of prosecution, we first examine the statute in question to determine if the statutory unit of prosecution has been expressly identified." *Id.* *12. If the unit of prosecution is clear from the statute, there is no need to review the history of the statute and other legislative history. When a statute is clear, courts apply the statute's plain language without complicating the task. *State v. Pope*, 427 S.W.3d 363, 368 (Tenn. 2013) (citing *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004)).

The offense of especially aggravated sexual exploitation of a minor criminalizes "knowingly . . . us[ing] . . . a minor to participate in the performance of, or in the production of, acts or material that includes the minor engaging in [sexual activity]." Tenn. Code Ann. § 39-17-1005(a)(1). The plain language of Tenn. Code Ann. § 39-17-1005(b) identifies the "unit of prosecution" by providing for separate counts for especially aggravated sexual exploitation when there are separate images or motion picture films. The statute reads, in pertinent part: "A person violating subsection (a) may be charged in a separate count for *each* individual performance, image, picture, drawing, photograph, motion picture film, videocassette tape, or other pictorial representation." Tenn. Code Ann. § 39-17-1005(b) (emphasis added).

The State introduced eleven different clips from Defendant's video camera that were transferred to Defendant's computer in separate files. Each of these video clips represents a "unit of prosecution," as each is a separate film or pictorial representation within the meaning of the statute. Each contains graphic images of a child participating in sexual acts or posing in simulated sexual positions. The plain language of section 39-17-1005(b) allows

for separate counts for each of these images or pictorial representations. Therefore, Defendant's multiplicity argument as to his convictions for especially aggravated sexual exploitation of a minor is without merit.

Defendant also faced six counts of aggravated statutory rape. Tennessee law defines this offense as "the unlawful sexual penetration of a victim by the defendant, or of the defendant by the victim when the victim is at least thirteen (13) but less than eighteen (18) years of age and the defendant is at least ten (10) years older than the victim." Tenn. Code Ann. § 39-13-506(c). "'Sexual penetration' means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required[.]" Tenn. Code Ann. § 39-13-501(7) (2010 & Supp. 2013). The definition of "sexual penetration" is broad and includes different examples of sexual activity, including "any other intrusion, however slight." The breadth of this definition convinces us that the "unit of prosecution" is each act of "unlawful sexual penetration."

Defendant was convicted of six counts of aggravated statutory rape; all counts included separate incidents of sexual penetration within the meaning of the aggravated statutory rape law. There was sufficient evidence to support the multiple convictions, and Defendant's multiplicity argument as to these charges is also without merit.

**B.**

Defendant also challenges the sufficiency of the evidence with regard to his seven convictions for criminally exposing the victim to HIV, claiming that Defendant's conduct did not pose a significant risk of transmitting HIV. This issue requires us to construe Tenn. Code Ann. § 39-13-109 and clarify the meaning of "significant risk."

Statutory construction is an issue of law which we review de novo. *Wlodarz v. State*, 361 S.W.3d 490, 496 (Tenn. 2012). We must look to the plain language of the statute to determine the intent of the legislature. *State v. Jennings*, 130 S.W.3d 43, 46 (Tenn. 2004). When the language of the statute is clear and unambiguous, we apply the statute's plain language in its normal and accepted use. *Keen v. State*, 398 S.W.3d 594, 610 (Tenn. 2012). In doing so, we are restricted to the natural and ordinary meaning of the statute's language. *Browder v. Morris*, 975 S.W.2d 308, 311 (Tenn. 1998). "'[E]very word in a statute is presumed to have meaning and purpose.'" *Keen*, 398 S.W.3d at 610 (alteration in original) (quoting *U.S. Bank*, *N.A. v. Tenn. Farmers Mut. Ins. Co.*, 277 S.W.3d 381, 386 (Tenn. 2009)).

Tenn. Code Ann. § 39-13-109 prohibits a person who knows he or she is infected with HIV from knowingly exposing his or her bodily fluids to another person in any manner that presents a significant risk of HIV transmission. The statute provides, in pertinent part:

> (a) A person commits the offense of criminal exposure of another to human immunodeficiency virus (HIV) when, knowing that the person is infected with HIV, the person knowingly:
> (1) Engages in intimate contact with another;
> . . . .
> (b) As used in this section:
> . . . .
> (2) "Intimate contact with another" means the exposure of the body of one person to a bodily fluid of another person in any manner that presents a *significant risk* of HIV transmission[.]

Tenn. Code Ann. § 39-13-109(a)(1), (b)(2) (emphasis added).

To support a conviction under this statute, the actual transmission of HIV is not required, only the "exposure" of bodily fluids in such a way that poses a significant risk of transmission. *Id.* § 39-13-109(d) ("Nothing in this section shall be construed to require the actual transmission of HIV in order for a person to have committed the offense of criminal exposure of another to HIV."). The word "exposure" has been interpreted to mean that "a defendant subjected a victim to risk of contact with bodily fluids in a manner that would present a significant risk of HIV transmission." *State v. Bonds*, 189 S.W.3d 249, 258 (Tenn. Crim. App. 2005).

Defendant focuses his challenge on the meaning of the term "significant risk," which is not defined in the statute.[5] He argues that the most appropriate definition is "risks so great that they are almost certain to materialize if nothing is done." *See Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005) (quoting *Delgado v. Stegall*, 367 F.3d 668, 672 (7th Cir. 2004)) (analyzing the definition of "substantial risk" in the context of an inmate's failure to protect claim). The State counters that significant risk in the context of HIV exposure "means that the risk is notable, as opposed to negligible or *de minimis*."

---

[5] The legislative history of Tenn. Code Ann. § 39-13-109 also does not provide any insight into the meaning of "significant risk." A related statute, Tenn. Code Ann. § 39-13-108 (2010), which concerns the Department of Health's ability to quarantine an HIV-positive individual who continues to pose a direct threat to others, also uses but does not define the term "significant risk."

The United States Supreme Court addressed the concept of "significant risk" related to the transmission of contagious diseases in *School Board of Nassau County, Florida v. Arline*, 480 U.S. 273 (1987). The Court identified four factors for determining whether a person with a contagious disease poses a significant risk to others. These include: (a) the nature of the risk; (b) the duration of the risk; (c) the severity of the risk; and (d) the probability the disease will be transmitted. *Id*. at 288.

The Eleventh Circuit Court of Appeals expanded upon this analysis in *Onishea v. Hopper*, 171 F.3d 1289, 1297 (11th Cir. 1999), finding that "the significance of a risk is a product of the odds that transmission will occur and the severity of the consequences." The court reasoned that "when the adverse event is the contraction of a fatal disease, the risk of transmission can be significant even if the probability of transmission is low: death itself makes the risk 'significant.'" *Id*. The court elaborated:

> We thus hold that when transmitting a disease inevitably entails death, the evidence supports a finding of "significant risk" if it shows both (1) that a certain event can occur and (2) that according to reliable medical opinion the event can transmit the disease. This is not an "any risk" standard: the asserted danger of transfer must be rooted in sound medical opinion and not be speculative or fanciful. But this is not a "somebody has to die first" standard, either: evidence of actual transmission of the fatal disease in the relevant context is not necessary to a finding of significant risk.

*Id*. at 1299.

The United States Supreme Court also discussed "significant risk" in the context of the Occupational Safety and Health Act ("OSHA"):

> First, the requirement that a "significant" risk be identified is not a mathematical straightjacket. . . . Some risks are plainly acceptable and others are plainly unacceptable. If, for example, the odds are one in a billion that a person will die from cancer by taking a drink of chlorinated water, the risk clearly could not be considered significant. On the other hand, if the odds are one in a thousand that regular inhalation of gasoline vapors that are 2% benzene will be fatal, a reasonable person might well consider the risk significant and take appropriate steps to decrease or eliminate it.

*Indus. Union Dep't, AFL-CIO v. Am. Petroleum Inst.*, 448 U.S. 607, 655 (1980).

We conclude that "significant risk" is a product of both the severity of the consequences and the likelihood that HIV will be transmitted. The question of whether a risk is significant is fact specific and should not be hamstrung by a mathematical straightjacket. Because the contraction of HIV and the development of AIDS can lead to death, the consequences are severe. But simply using severity as the benchmark would be too broad. If the chance of transmitting HIV is but a faint possibility and no more than speculative in nature, *see Onishea*, 171 F.3d at 1299, then the risk is not "significant" for purposes of the criminal exposure statute, despite the severity of the potential consequences. We hold that in the context of the criminal exposure to HIV statute, "significant risk" requires a chance of HIV transmission that is more definite than a faint, speculative risk, as shown by expert medical proof.

Defendant argues that his sexual acts did not pose a significant risk of transmitting HIV because he did not ejaculate during any of these sexual acts. We disagree. Dr. McGowan testified that transmission of HIV may occur without ejaculation because pre-ejaculate fluid or mucosal fluid is sufficient to transfer HIV to an uninfected person. Defendant's argument fails.

We now address whether sufficient evidence supports the seven convictions for criminal exposure of another to HIV. The severity of the potential consequence is patently obvious. However, the question remains whether the evidence supports a finding that each of these sexual acts presented a chance of HIV transmission that is more definite than a faint, speculative risk of transmission.

Count 12 involves Defendant licking the victim's anus. Dr. McGowan testified that although she would discourage one of her HIV-positive patients from licking the anus of an uninfected person, the licking of the anus presented a "very low risk." Based on this testimony, taken in the light most favorable to the State, the medical proof offered by the State shows that the risk of HIV transmission was too faint and speculative to support a conviction in Count 12.

Count 13 involves Defendant performing oral sex on the victim. Dr. McGowan testified that saliva is not considered an infectious source of HIV infection and that unless the mouth contained open sores or there was blood flowing in the mouth, there likely would not be bodily fluids present in the mouth to transmit HIV. The State presented no proof that Defendant had sores or blood in his mouth. Based on this expert medical proof, we hold that this sexual act did not pose a significant risk of HIV transmission but only a faint, speculative risk. Therefore, the proof is insufficient to support the conviction in Count 13.

Count 14 involves Defendant's conduct of digitally probing the victim's anus. Dr. McGowan testified that there would be a risk of transmission if an HIV-positive patient had bodily fluid on his finger capable of transmitting HIV and then penetrated another person's anus. Dr. McGowan discourages her HIV-positive patients from engaging in such activity. The videos showed that the digital probing of the victim's anus occurred after Defendant performed oral intercourse on the victim. Given the timing of the digital penetration and the fact that some sexual activity already had taken place between Defendant and the victim, the jury could infer that pre-ejaculate fluid was on Defendant's finger. In the light most favorable to the State, there was sufficient evidence, including Dr. McGowan's expert medical testimony, for the jury to infer that the digital probing of the victim's anus presented a chance of HIV transmission more definite than a faint, speculative risk. Therefore, we find that there was sufficient evidence to sustain Defendant's conviction on Count 14.

We next address Counts 15 and 16, which relate to Defendant performing anal sex on the victim. The jury viewed two separate videos of Defendant using his penis to penetrate the victim's anus. Dr. McGowan testified that anal sexual contact posed the greatest risk of HIV transmission of any form of intimate contact. The evidence establishes that the risk was significant and not merely speculative. Accordingly, there was sufficient evidence to support the guilty verdicts on Counts 15 and 16.

Count 17 involves the victim performing oral sex on Defendant. Dr. McGowan testified that mouth to penile contact presented a risk of exposure to HIV. She explained that mucosal fluid inside the penis can transmit HIV even if a male does not ejaculate. Taken in the light most favorable to the State, Dr. McGowan's expert medical testimony supports the conclusion that the victim performing oral sex on Defendant presents a chance of HIV transmission that is more definite than a faint, speculative risk. Therefore, we find there was sufficient evidence to support the conviction in Count 17.

Count 18 involves Defendant's manual manipulation of the victim's penis. Dr. McGowan testified that she would not even counsel an HIV-positive patient against masturbating a partner because masturbating an uninfected person "would be low risk to the uninfected person." Viewing the evidence in the light most favorable to the State, we find that there is not sufficient evidence to support the conviction in Count 18.

## C.

Defendant also contends that his sentence was excessive. When a defendant challenges the length, range, or manner of service of a sentence, this Court reviews the trial court's decision under an abuse of discretion standard, with a presumption of reasonableness

granted to "within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). This same deferential standard applies to consecutive sentencing. *State v. Pollard*, 432 S.W.3d 851, 859 (Tenn. 2013). Whether a defendant is sentenced concurrently or consecutively is a matter primarily within the trial court's discretion. *Dorantes*, 331 S.W.3d at 392.

This deferential standard of review comports with the statutory language of Tenn. Code Ann. § 40-35-115(a), which gives trial courts discretion to impose concurrent or consecutive sentences if a defendant is convicted of more than one offense. A trial court may impose consecutive sentencing upon a determination that one or more of the criteria set forth in Tenn. Code Ann. § 40-35-115(b) exists. This section permits the trial court to impose consecutive sentences if the court finds, among other criteria, that:

> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims[.]

Tenn. Code Ann. § 40-35-115(b)(5).

The trial court explained its reasons for imposing consecutive sentencing, including consideration of the serious aggravating circumstances that Defendant befriended the victim, that he provided the victim with alcohol, and that he directed the victim to engage in different sexual poses. The nature and scope of the sexual acts were extreme, with Defendant sexually penetrating the victim in multiple orifices. The victim's impact statement revealed how deeply the experience negatively affected him. Furthermore, Tenn. Code Ann. § 39-17-1005(d) specifically allows for consecutive sentencing for convictions of especially aggravated sexual exploitation of a minor, even if arising out of the same conduct. We find no abuse of discretion in the trial court's imposition of consecutive sentences under Tenn. Code Ann. § 40-35-115(b).

## Conclusion

We affirm all eleven convictions of especially aggravated sexual exploitation of a minor, all six convictions of aggravated statutory rape, and four of the seven convictions for criminal exposure of another to HIV. We reverse three convictions for criminal exposure of

another to HIV, finding there was insufficient evidence to support those three convictions in light of the expert medical testimony that those acts did not constitute a significant risk of HIV transmission. Accordingly, Defendant's sentence is modified to an effective term of 156 years. Otherwise, Defendant's sentence is affirmed. Because Defendant is indigent, costs of this appeal are taxed to the State of Tennessee, for which execution may issue if necessary.

_____
SHARON G. LEE, JUSTICE