IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 5, 2023

## STATE OF TENNESSEE v. TRINCES EUGENE HART

**Appeal from the Circuit Court for Henderson County**
**No. 22-200-2    Donald H. Allen, Judge**

_____

### No. W2023-00122-CCA-R3-CD

_____

Following a Henderson County jury trial, Defendant, Trinces Eugene Hart, was convicted of three counts of unlawful possession of a firearm by a convicted felon. He appeals, arguing the evidence was insufficient to sustain his convictions. After review, we affirm the judgments of the trial court; however, we remand the case to the trial court for merger of the three counts into a single judgment of conviction for unlawful possession of a firearm by a convicted felon.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed;
Case Remanded**

MATTHEW J. WILSON, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, JJ., joined.

J. Colin Morris, Jackson, Tennessee (on appeal), and Michael Thorne (at trial), Lexington, Tennessee, for the appellant, Trinces Eugene Hart.

Jonathan Skrmetti, Attorney General and Reporter; Katherine C. Redding, Senior Assistant Attorney General; Jody S. Pickens, District Attorney General; and Matthew Floyd and Eric Wood, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

### I. Background

On January 28, 2022, the Henderson County Grand Jury indicted Defendant, Trinces Eugene Hart, on one count of unlawful possession of a firearm by a convicted felon. On August 1, 2022, the Grand Jury returned a superseding indictment charging Defendant with three counts of unlawful possession of a firearm by a convicted felon. Each

of the three counts referenced the same underlying offense for Defendant's status as a felon: "Sale of Marijuana in Henderson County Circuit Court on 3/4/14." The case proceeded to a jury trial on August 30, 2022.

## II. Factual Summary

The evidence produced at trial established that on March 9, 2021, Defendant was a passenger in a gray Buick Regal traveling northbound on State Route 22 in Henderson County. Jasmine Smith, Defendant's girlfriend, drove the Buick, Defendant was in the front passenger seat, and the couple's young child was in the back seat. Neither adult occupant owned the car. When Ms. Smith turned right onto Hamlett Street, she made a wide turn into the oncoming lane of traffic in which Tennessee Highway Patrol (THP) Sergeant Jeremy Pratt was driving his THP vehicle. Sergeant Pratt was being followed by THP Trooper Mikeal Little, who was driving his THP vehicle. Sergeant Pratt then pulled over the Buick, with Trooper Little assisting in the traffic stop. An audio and video recording of the traffic stop was made an exhibit at trial and a portion published to the jury.

Sergeant Pratt testified that as he pulled over Ms. Smith's car, he saw Ms. Smith and Defendant "moving around inside the vehicle more than normal." Sergeant Pratt based his assessment of the degree of the occupants' movement on his fifteen years' experience in law enforcement (including ten and a half years with THP), which included "[t]housands" of traffic stops. Sergeant Pratt approached Ms. Smith's window, and she told him she did not have a valid driver's license. After Sergeant Pratt confirmed this fact with THP dispatch, he had Ms. Smith exit the vehicle so he could speak with her privately. When Sergeant Pratt asked Ms. Smith about the movement in her car, she admitted that she had marijuana in her billfold. After Sergeant Pratt obtained the marijuana, he again asked Ms. Smith about the movement in the car; he specifically referenced seeing "a beverage of some sort, that was spilled out and things were kind of in disarray." He testified that he was concerned that "someone was trying to hide contraband inside the vehicle."

During the traffic stop, Sergeant Pratt contacted the Henderson County Sheriff's Department to conduct a warrants check on Defendant. When the Sheriff's Department dispatch informed Sergeant Pratt that Defendant had an active arrest warrant, the troopers arrested Defendant. While the troopers placed handcuffs on Defendant, Ms. Smith stood nearby. Sergeant Pratt asked the Buick's adult occupants about the movement in the car and whether they were trying to hide something, at which point Defendant asked Ms. Smith whether she had told the troopers about "what's inside the car[.]" Sergeant Pratt testified that Defendant told him (Pratt) that a gun was inside the car; Defendant told the troopers that he had moved the gun, which was not his, but he did not explain why he moved the gun. Defendant acknowledged to the troopers that he could not own a gun based on a prior

- 2 -

felony conviction. Defendant did not identify the owner of the handgun to Sergeant Pratt, and Ms. Smith did not claim ownership of the handgun. During the traffic stop, Ms. Smith told the troopers that Defendant had told her there was a gun in the car.

During Sergeant Pratt's testimony, after he referenced Defendant's admission to a prior felony conviction, the State introduced judgments of conviction from Henderson County Circuit Court case number 13-141-2, in which Defendant pleaded guilty to three counts of "sale of marijuana," a Class E felony.[1] According to the judgments, filed April 9, 2014,[2] Defendant was convicted of selling marijuana on three separate dates in 2013: February 19, February 25, and March 13.

Trooper Little testified that he "kept an eye on" the Buick while Sergeant Pratt conducted the traffic stop. Trooper Little explained that during the traffic stop, Defendant "was leaning over a lot towards the driver's side, turning back, looking at what we were doing . . . just a lot of movement with his—his body and his head." Based on his twelve years' experience with THP and thousands of traffic stops during that time, Trooper Little, like his colleague, found Defendant's actions unusual.

Trooper Little testified that after Defendant was removed from Ms. Smith's car and handcuffed in her presence, Defendant "talk[ed] to her about, you know, are you going to let them know what's in the vehicle?" This comment prompted Trooper Little to lead Defendant to his THP cruiser, at which point Trooper Little asked Defendant what was in the Buick. Defendant admitted to Trooper Little that a handgun was in the car, saying "it was under the driver's seat, but [Defendant] had . . . grabbed it and moved it to the passenger seat between the seat and the center console." Trooper Little then had Defendant "relay that information . . . again to Trooper Pratt[.]" The troopers then searched the Buick, and Trooper Little found the handgun "where [Defendant] stated that it was located." Trooper Little observed that the handgun "had rounds in the magazine but nothing in the chamber."

While speaking to Trooper Little, Defendant claimed he previously told Ms. Smith that "she needed to get rid of the gun" because Defendant "couldn't be around" guns. The trooper also said, however, that Defendant denied that the handgun belonged to either Defendant or Ms. Smith. Defendant "kept stating that it's not hers, and it's not mine . . . ." Trooper Little also testified that at one point during the stop, Ms. Smith said "she had no

---

[1] *See* Tenn. Code Ann. § 39-17-417(g)(1) (sale of not less than one-half ounce nor more than ten pounds of marijuana is a Class E felony).

[2] The judgments in case number 13-141-2 reflect that Defendant pleaded guilty, and his sentence was imposed, on March 4, 2014.

idea [the gun] was in there." Trooper Little acknowledged that the handgun was not tested for fingerprints.

After it became apparent that the troopers were going to charge Defendant for possessing the handgun, he began "trying to get [Ms. Smith] to . . . take the charge." Defendant told Ms. Smith "this is going to send me away. . . . I need you to take the charge, say it was yours. Say it's your . . . handgun." Defendant kept repeating this request to Ms. Smith after troopers had taken him and Ms. Smith to the Henderson County jail until "she crossed through the security doors."

When called as a trial witness for Defendant, Ms. Smith testified differently than what she first told the troopers, and claimed the handgun was hers. She said she carried the gun because a gang member threatened "to take [her] life if [she] snitched on them." She testified that before the traffic stop, she had spoken with local law enforcement and with "the secretary of the DA, too" about carrying the handgun. She also testified that she spoke with Defendant before the arrest about her carrying the gun; she claimed Defendant said it was okay "just [as] long as I keep it away from him." She also claimed to have told Defendant she had removed the gun from the car, although she admitted she "didn't want to take it out of my car because I'm scared for my safety. I mean, [Defendant] may be there, but he can't save me from a bullet." Contrary to Sergeant Pratt's testimony, Ms. Smith claimed she told the sergeant the gun was hers "at the jail." She also acknowledged that she was unaware that Defendant had stated, both at the scene and during his preliminary hearing testimony, that he had moved the gun from underneath the driver's seat.

Defendant decided not to testify or present additional proof.

Following its deliberations, the jury found Defendant guilty on three counts of unlawful firearm possession by a convicted felon, as charged in the indictment. The trial court imposed a ten-year sentence for each conviction, with the sentences to run concurrently.[3] This timely appeal followed.

### III. Analysis

### A. Unlawful Possession of a Firearm by a Convicted Felon

Defendant argues the evidence was insufficient to sustain his conviction for unlawful possession of a firearm by a convicted felon because the evidence did not establish that he "possessed a weapon actually or constructively." He asserts the firearm

---

[3] Defendant does not challenge the length and manner of service of his sentence on appeal.

found in the car belonged to Ms. Smith. The State responds that "[a] rational trier of fact could have found the defendant possessed a firearm." We agree with the State.

### 1. Standard of Review

The standard of review for a claim challenging the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). "This standard of review is identical whether the conviction is predicated on direct evidence or circumstantial evidence, or a combination of both." *State v. Williams*, 558 S.W.3d 633, 638 (Tenn. 2018) (citing *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011)).

A guilty verdict removes the presumption of innocence and replaces it with one of guilt on appeal; therefore, the burden is shifted to the defendant to prove why the evidence is insufficient to support the conviction. *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)). On appeal, "we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom." *Id.* at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual disputes raised by such evidence, are resolved by the jury as the trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 405, 410 (Tenn. 1990). Therefore, we are precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Stephens*, 521 S.W.3d 718, 724 (Tenn. 2017).

Here, Defendant was convicted of three counts of unlawful possession of a firearm by a convicted felon. As relevant to this case, "A person commits an offense who unlawfully possesses a firearm" and "[h]as been convicted of a felony drug offense." Tenn. Code Ann. § 39-17-1307(b)(1)(B). On appeal, Defendant does not contest that the three judgments of conviction introduced at trial were for felony drug offenses. Defendant also does not contest that the handgun recovered from the Buick was a "firearm" or that he was not permitted to carry a firearm as a convicted felon. Defendant's sole argument is that the State failed to establish beyond a reasonable doubt that he "possessed" the handgun at the time of his arrest.

"Possession" may be actual or constructive. *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001). Our courts have defined "constructive possession" as "'the ability to reduce

an object to actual possession.'" *State v. Transou*, 928 S.W.2d 949, 956 (Tenn. Crim. App. 1996) (quoting *State v. Williams*, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981)). Constructive possession requires that a person had "the power and intention at a given time to exercise dominion and control over . . . [an item] either directly or through others." *Shaw*, 37 S.W.3d at 903. "One's mere presence in an area where [contraband is] discovered, or one's mere association with a person who is in possession of [contraband], is not alone sufficient to support a finding of constructive possession." *Id.* (citing *State v. Patterson*, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997), and *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987)). "Constructive possession depends on the totality of the circumstances in each case. It may be proven by circumstantial evidence." *State v. Robinson*, 400 S.W.3d 529, 534 (Tenn. 2013) (citing Tenn. Code Ann. § 39-17-419). Possession "may be exclusive or joint." *Key v. State*, 563 S.W.2d. 184, 189 (Tenn. 1978). Specific to firearms, "[c]onstructive or joint possession may occur only where the personally unarmed participant has the power and ability to exercise control over the firearm." *Id.*

## 2. Application to Present Case

As stated above, Defendant contends that because the evidence produced at trial established Ms. Smith owned the gun found in the Buick, the evidence was insufficient to establish he possessed the gun at the time of his arrest. However, in this case "the dispositive question [is] not one of ownership but of possession." *State v. Fife*, No. M2013-02211-CCA-R3-CD, 2014 WL 2902276, at *5 (Tenn. Crim. App. June 26, 2014). "Although ownership may indicate possession, one may also be in possession of a weapon without holding actual title to it." *State v. Peters*, No. W2018-01328-CCA-R3-CD, 2019 WL 3775872, at *4 (Tenn. Crim. App. Aug 9, 2019).

Here, shortly after the traffic stop, Defendant asked Ms. Smith, who made no attempt to claim ownership of her handgun during the traffic stop, whether she had told the THP troopers about "what was in the car." Defendant denied ownership of the gun, but he twice admitted to the troopers that he had moved the gun from underneath the driver's seat. The gun was found between the front passenger's seat (where Defendant was seated) and the center console, where Defendant had told the troopers that the gun would be found. Defendant had the power to exercise dominion and control over the gun and admitted to the troopers he had done so. A reasonable juror could infer Defendant did so to hide the handgun from the troopers.

The facts of the case are somewhat analogous to those of *State v. Robertson*, No. W2020-00365-CCA-R3-CD, 2021 WL 2189998 (Tenn. Crim. App. May 28, 2021). In that case, after arresting a driver for driving under the influence, a THP trooper found a handgun under the driver's seat. *Id.* at *2. The driver denied owning the gun and asserted that the

gun belonged to a passenger that had been in the truck earlier in the day. *Id.* The passenger testified at trial that the gun was his and that he had left it under the driver's seat of Mr. Robertson's truck. *Id.* at *3. The jury rejected Mr. Robertson's contentions, convicting him of being a convicted felon in possession of a handgun and possessing a firearm while intoxicated, among other offenses. *Id.* at *4. On appeal, this court affirmed Mr. Robertson's convictions. *Id.* at *5.

Similarly, in this case we conclude the evidence, viewed in the light most favorable to the State and considering the totality of the circumstances, was sufficient for the jury to find, beyond a reasonable doubt, that Defendant possessed the handgun found next to Defendant's seat during the traffic stop. After considering the evidence, the jury rejected Defendant's contention that he did not possess the handgun, and we may not second-guess the jury's conclusions on appeal. Defendant is not entitled to relief on this issue.

## B. Defendant's Convictions

As stated above, Defendant was convicted of three counts of unlawful possession of a firearm by a convicted felon. The three counts referenced a single episode of Defendant's possession of a single handgun—the handgun found inside the Buick during the traffic stop. The counts differed in that each count referenced a separate prior conviction for felony drug possession. The trial court imposed a ten-year sentence for each conviction, with the sentences to be served concurrently. Although not raised by either party, we conclude that the case must be remanded to the trial court for merger of the three counts into a single conviction for unlawful possession of a firearm by a convicted felon.

"It is well settled in Tennessee that, under certain circumstances, two convictions or dual guilty verdicts must merge into a single conviction to avoid double jeopardy implications." *State v. Berry*, 503 S.W.3d 360, 362 (Tenn. 2015). Our supreme court has stated,

> [I]n single prosecutions, "multiple punishment" challenges ordinarily fall into one of two categories: unit-of-prosecution claims and multiple description claims. Unit-of-prosecution claims arise when a defendant has been convicted of multiple violations of the same statute. Multiple description claims arise when a defendant has been convicted of multiple criminal offenses under different statutes.

*State v. Allison*, 618 S.W.3d 24, 43 (Tenn. 2021).

Defendant was charged with and convicted of multiple violations of Code section 39-17-1307(b)(1)(B), so this case involves a "unit of prosecution" issue. "When

addressing unit-of-prosecution claims, courts must determine 'what the legislature intended to be a single unit of conduct for purposes of a single conviction and punishment.'" *State v. Watkins*, 362 S.W.3d 530, 543 (Tenn. 2012). "If the unit of prosecution is clear from the statute, there is no need to review the history of the statute and other legislative history." *State v. Hogg*, 448 S.W.3d 877, 886 (Tenn. 2014). In this case, the statutory language makes clear that the unit of prosecution for purposes of section 39-17-1307 is the possession of a firearm. *See State v. Reynolds*, No. E2021-00066-CCA-R3-CD, 2022 WL 1741266, at *11 (Tenn. Crim. App. May 31, 2022). The State was within its discretion to charge Defendant with three separate counts of felony firearm possession based on Defendant's three prior felony convictions, as each different prior conviction constituted a different "theory" or "circumstance" under which Defendant could be convicted of firearm possession by a conviction felon. However, double jeopardy concerns make clear that Defendant can only be punished for a single instance of firearm possession, as proof of only one episode of possession was presented to the jury. *See id.* ("[T]he unit of prosecution intended by the legislature is the possession of a firearm and that the predicate felonies identified in subsections (A) and (B) are identified for the purposes of felony classification.").

Accordingly, we conclude that this case must be remanded to the trial court. Upon remand, the trial court shall enter revised judgments reflecting the merger of Counts 1 through 3.

## IV. Conclusion

We conclude the evidence was sufficient to sustain Defendant's convictions, but the trial court erred by failing to merge the three counts into a single conviction. Accordingly, we remand the case to the trial court for the merger of those counts and entry of corrected judgments. After merger, the record shall reflect a single conviction for possession of a firearm by a convicted felon and a ten-year sentence in the Department of Correction. We affirm the judgments of the trial court in all other respects.

_____
MATTHEW J. WILSON, JUDGE