IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs August 1, 2017

## STATE OF TENNESSEE v. QUANTEZ PERSON

### Appeal from the Criminal Court for Shelby County
### No. 13-0458    James M. Lammey, Jr., Judge

### No. W2016-01945-CCA-R3-CD

The defendant, Quantez Person, appeals his Shelby County Criminal Court jury conviction of criminal exposure to human immunodeficiency virus ("HIV"), *see* T.C.A. § 39-13-109(a), arguing that the trial court erred by consolidating the charge of criminal exposure to HIV with a charge of aggravated rape of which the defendant was later acquitted, that the trial court erred by admitting health department records, and that the evidence was insufficient to support his conviction. Under the circumstances presented in this case, Tennessee Rule of Criminal Procedure 8(a) barred the State from bringing the charge of criminal exposure to HIV to trial. In consequence, the defendant's conviction is vacated, and the charge is dismissed.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Vacated and Case Dismissed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, J., joined. TIMOTHY L. EASTER, J., concurred in results.

Claiborne Ferguson, Memphis, Tennessee, for the appellant, Quantez Person.

Herbert H. Slatery III, Attorney General and Reporter; Robert Wade Wilson, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Abbey Wallace, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

Originally charged with aggravated rape and criminal exposure to HIV, the defendant was convicted by a Shelby County Criminal Court jury of criminal exposure to HIV based upon his engaging in unprotected sexual acts with the victim in March 2012.

At the defendant's May 2016 trial, the victim testified that as she walked from her home to the home of a friend, a man driving a Chrysler convertible stopped and offered to give her a ride in his car. Although she was only two or three blocks from her destination, the victim accepted the offer and got into the car. The victim recalled that the car's interior was decorated with Dallas Cowboys memorabilia. The victim provided the man with directions to her destination, but the man did not stop when he reached the destination. Instead, he kept driving and stopped only when he reached a secluded area behind the "Food Stamp Office" in Memphis. The victim testified that the man brandished a knife and demanded that the victim remove her clothing. The victim complied, and the man forced her to engage in vaginal and oral sex, which sex acts culminated in the man's ejaculating into the victim's mouth and vagina. According to the victim, the man released her following the sex acts, and she telephoned a friend to take her to the hospital.

Forensic evidence collected during the victim's examination was forwarded to the Tennessee Bureau of Investigation ("TBI") for testing. During a subsequent interview with the police, the victim identified the defendant as the man who had forced her to engage in sex acts. Testing performed by the TBI confirmed the presence of the defendant's sperm in the victim's mouth and in her vagina.

Carol Boyd, an "environmentalist in epidemiology" with the Shelby County Health Department who had previously worked as a counselor in the sexually transmitted disease department of the health department, testified that part of her counseling duties had been to "notify and counsel clients if they had a sexual [sic] transmitted disease or if they had been named as a contact." Ms. Boyd testified that she counseled the defendant after he tested positive for HIV in 2004. Ms. Boyd said that she informed the defendant of his HIV status and apprised him of "all the risks of being HIV positive," including that he could transmit the disease via unprotected sex. Health department records exhibited to Ms. Boyd's testimony confirmed that the defendant had previously tested positive for HIV.

Based upon this evidence, the jury acquitted the defendant of aggravated rape but convicted him of criminal exposure to HIV. Following a sentencing hearing, the trial court imposed a sentence of six years' incarceration. The defendant filed a timely but unsuccessful motion for new trial followed by a timely notice of appeal.

In this appeal, the defendant asserts that the trial court erred by granting the State's motion to consolidate the offenses under Tennessee Rule of Criminal Procedure 8(a) and by denying his motion to sever the offenses pursuant to Tennessee Rule of Criminal Procedure 14(b)(2). He also contends that the admission of the health department records, which included the results of previous HIV testing, violated the rule

-2-

against hearsay and his rights under the Confrontation Clause. Finally, the defendant asserts that the evidence was insufficient to support his conviction because the State failed to establish that his behavior created a significant risk of transmission of HIV. We consider each claim in turn.

## I. Joinder/Severance

The defendant asserts that the trial court erred by granting the State's motion to consolidate the aggravated rape charge with the criminal exposure to HIV charge, arguing that consolidation of the offenses was barred by the State's failure to join the two offenses prior to the first trial of the aggravated rape charge in 2014, which trial ended in a mistrial. Relatedly, the defendant argues that even if the trial court correctly consolidated the offenses under Rule 8, the trial court should nevertheless have severed the offenses under Rule 14 because a fair determination of his guilt of both offenses was not possible in a joint trial. The State contends that the defendant is not entitled to relief because he cannot establish that he was prejudiced by the ruling of the trial court.[1]

In November 2014, following a mistrial of the aggravated rape charge, the State moved the trial court to consolidate indictment number 12-05938, which charged the defendant with aggravated rape of the victim, with indictment number 13-00458, which charged the defendant with criminally exposing the victim to HIV. At the May 2, 2016 hearing on the State's motion, the State argued that consolidation of the indictments was mandatory under the terms of Rule 8 because the two offenses arose "out of the same criminal offense." The prosecutor stated that at the time the defendant was indicted for aggravated rape, "the state did not know that he had HIV." The prosecutor agreed that it would have been preferable to seek a superseding indictment in case number 12-05938 and could not explain why the State had instead obtained a separate indictment for the HIV offense. The prosecutor acknowledged that when case number 12-05938 went to trial in 2014, the State was aware of the defendant's HIV status and knew that he had been charged with criminally exposing the victim to HIV. The prosecutor said that the State did not believe it was "appropriate" to seek joinder of the offenses at that time but offered no further explanation for the State's failure to seek consolidation prior to the 2014 trial.

The defendant agreed with the State "that Rule 8 requires mandatory joinder of these two alleged criminal . . . actions" but argued that consolidation of the charges at that point would violate the terms of Rule 8(a) as well as double jeopardy principles because the aggravated rape charge had already been tried in 2014, and that

---

[1] The State also suggests that the defendant has waived our consideration of this issue by changing theories on appeal. A careful reading of the record establishes that the State is mistaken.

trial had ended in a mistrial after the jury failed to return a verdict. He contended that because the State elected to proceed to trial on only the aggravated rape offense when Rule 8 mandated joinder, the State was now barred from seeking a trial on the charge of criminal exposure to HIV.

The defendant further asked that, should the court rule that consolidation was mandatory and that the criminal exposure to HIV charge was not barred, the court sever the offenses under Rule 14. He argued that a fair determination of his guilt of both offenses would not be possible in a joint trial because he intended to present a defense that his sexual intercourse with the victim was consensual and that presenting such a defense would require that he admit an element of the charge of criminal exposure to HIV.

The court stated that, had the defendant been convicted in 2014, then "it's pretty much a no-brainer there" that double jeopardy principles would have prevented trial on the HIV charge but that, because the 2014 trial ended in a mistrial, "the defendant's not harmed in any way." The court concluded that joinder of the offenses was mandatory under Rule 8 and consolidated the indictments for trial. As to the defendant's severance motion, the court found that the defendant's claim of consent "doesn't make sense," asking, "Do you think somebody is going to consent to having sex with you?" The court denied the severance:

> I don't find that a severance is appropriate to promote a fair
> determination of the defendant's guilt or innocence of each
> offense. I don't find that to be true. I think it would be unfair
> to sever these, especially in light of the fact, like I was trying
> to say, if the defense [is] consent, then they're going to find
> out about HIV, regardless. It just only makes sense, it seems.

Here, the offenses were not charged in a single indictment but in two separate indictments. The trial court held, and the parties agreed, that joinder of the offenses in this case was covered by the rules concerning mandatory joinder.

Previously, the author of this opinion has stated that *all* questions of joinder and severance were subject to review for an abuse of the trial court's discretion. *See, e.g., State v. Schiefelbein*, 230 S.W.3d 88, 125 (Tenn. Crim. App. 2007). This standard, however, has been altered by more recent caselaw. To be sure, prior to the passage of the rules of criminal procedure, all questions of joinder and severance were reviewed for an abuse of discretion because the trial court retained broad discretion with regard to both joinder and severance of offenses. *See State v. Johnson*, 342 S.W.3d 468, 472 (Tenn. 2011) ("Early on, the prevailing view—animated by the belief that trial courts were

charged with safeguarding the rights of both the prosecution and the defendant—left decisions regarding the consolidation of charges, even charges involving separate and distinct crimes, to the sound discretion of the trial court."). The adoption of Rule 8 in particular "embodies a significant departure from the earlier court-made principles governing joinder of offenses." *Id.* Specifically, Rule 8(a) makes joinder mandatory rather than discretionary when certain requirements are met. For that reason, when reviewing a claim regarding the mandatory joinder provision of Tennessee Rule of Criminal Procedure 8(a), this court is bound by the factual findings of the trial court unless the evidence preponderates against them, *see State v. Baird*, 88 S.W.3d 617, 620 (Tenn. Crim. App. 2001), but we review "de novo with no presumption of correctness" the trial court's application of the law to the facts, *Johnson*, 342 S.W.3d at 471; *State v. Brandon Churchman*, No. W2013-00175-CCA-R3-CD, slip op. at 9 (Tenn. Crim. App., Nashville, Apr. 28, 2014).[2]

As indicated, the offenses at issue in this case stem from two separate indictments rendered prior to the defendant's first trial on the aggravated rape charge in 2014. Tennessee Rule of Criminal Procedure 13 provides that a trial court "may order consolidation for trial of two or more indictments . . . if the offenses and all defendants could have been joined in a single indictment, presentment, or information pursuant to Rule 8." Tenn. R. Crim. P. 13(a). Tennessee Rule of Criminal Procedure 8 governs mandatory joinder of offenses:

> Two or more offenses shall be joined in the same indictment, presentment, or information, with each offense stated in a separate count, or the offenses consolidated pursuant to Rule 13, if the offenses are:
>
> (A) based on the same conduct or arise from the same criminal episode;
>
> (B) within the jurisdiction of a single court; and
>
> (C) known to the appropriate prosecuting official at the time of the return of the indictment(s), presentment(s), or information(s).

Tenn. R. Crim. P. 8(a). The evidence in this case clearly establishes that the offenses are based on the same conduct–the defendant's emission of semen into the victim's mouth

---

[2] In contrast, "decisions concerning permissive joinder and severance of offenses pursuant to Rules of Criminal Procedure 8(b) and 14(b)(1)" are reviewed "for an abuse of discretion." *Spicer v. State*, 12 S.W.3d 438, 442-43 (Tenn. 2000) (citing *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)).

and vagina during his sexual penetration of her. *See Johnson*, 342 S.W.3d at 473 (observing that "the simplest example of a same conduct offense involves a single act that results in a number of interrelated offenses").[3] Both offenses occurred within the jurisdiction of the Shelby County Criminal Court and, importantly, both offenses were "known to the appropriate prosecuting official at the time" of the request for consolidation under Rule 13. Indeed, the record establishes that the prosecutor was aware of not only the salient facts underlying the offense but also the existence of the indictment charging the defendant with criminal exposure to HIV prior to the defendant's first trial on the aggravated rape, and it intentionally elected not to request consolidation of the offenses at that time. Under these circumstances, joinder of the two offenses was required. *See* Tenn. R. App. P. 8(a).

Although the defendant agrees that consolidation of the offenses was mandatory under the terms of Rule 8, he argues, as he did prior to trial, that the State forfeited its right to prosecute the charge of criminal exposure to HIV by proceeding to trial on only the aggravated rape charge when it was aware of the criminal exposure to HIV charge. The State claims that because the first trial ended in a mistrial, multiple trials were inevitable such that the defendant suffered no prejudice flowing from the State's failure to join the offenses prior to the first trial.

Our supreme court has observed that "[o]ne of the purposes of the mandatory joinder requirements in [Rule] 8(a) is to stop the practice by some prosecuting attorneys of 'saving back' charges because this practice necessitates multiple trials and adversely affects discovery, plea bargaining, and other pre-trial procedures." *Johnson*, 342 S.W.3d at 473 (quoting *Baird*, 88 S.W.3d at 621). Indeed, the Advisory Commission Comments for Rule 8 provide:

> The commission wishes to make clear that section (a) is meant to stop the practice by some prosecuting attorneys of "saving back" one or more charges arising from the same conduct or from the same criminal episode. Such other charges are barred from future prosecution if known to the appropriate prosecuting official at the time that the other prosecution is commenced, but deliberately not presented to a grand jury. "Appropriate prosecuting official" shall be so construed as to achieve the purpose of this rule, which is the prevention of a deliberate and willful "saving back" of known charges for future prosecution. The refusal of the grand jury

---
[3]     Because the indictment charging aggravated rape is not included in the record on appeal, the record does not indicate the nature of the form of penetration alleged by the State.

> to act upon such other charges would not be a violation of this
> joinder rule so as to bar future prosecution of such charges.

Tenn. R. Crim. P. 8, Advisory Comm'n Cmt. The State's failure to join offenses when joinder is mandatory under Rule 8(a) "prevents the State from subsequently prosecuting the other charges that should have been included in the original indictment unless the charges have been severed" pursuant to Rule 14(b)(2). *Johnson*, 342 S.W.3d at 473; *see also King v. State*, 717 S.W.2d 306, 308 (Tenn. Crim. App. 1986).

Because the approach employed by this court to questions concerning the late addition of offenses that must be joined under the terms of Rule 8 has been anything but consistent, even in the absence of questions concerning principles of due process and prosecutorial vindictiveness, we deem it necessary to recount those cases in our search for common threads that might lead us to some rule of law that can be consistently applied in the future.[4]

We begin with *King*, for it appears that, as is unfortunately too often the case, "[m]uch of the uncertainty and confusion in the law has resulted from the practice of departing, in legal opinions, from the point in judgment, and throwing out loose dicta upon kindred subjects." *Cox v. Bank of Tenn.*, 35 Tenn. 140, 143 (1855). King was originally charged in January 1982 with one count of assault with intent to commit murder in the first degree but convicted of malicious stabbing. *King*, 717 S.W.2d at 307. King appealed his conviction, and this court reversed his conviction on grounds "that malicious stabbing is not a lesser included offense of assault with intent to commit murder in the first degree." *Id.* (citing *State v. Willie Joe King*, No. 82-242-III (Tenn. Crim. App., Nashville, Oct. 21, 1983)). Following this court's dismissal of the case, King was charged via a January 1984 indictment with malicious stabbing. The trial court granted King's subsequent motion to dismiss the January 1984 indictment "on the ground that the second indictment was prohibited by Rule 8(a)." *Id.*

The State appealed the trial court's ruling, arguing that dismissal of the second indictment was not proper because the State had not acted intentionally or maliciously when failing to join the charge of malicious stabbing with the original charge of assault with intent to commit first degree murder. This court rejected the idea that Rule 8(a) "addresses only volitional acts of the District Attorney and applies only when the District Attorney is not acting in good faith." *Id.* Instead, the court, observing that the purpose of Rule 8(a) "is to prevent a defendant from being subjected to separate trials for multiple offenses when the multiple offenses are based upon the same conduct or

---

[4]    A more eloquent jurist might describe our decisions as a "study in applied confusion, articulated ambivalence, and devious dicta." *State v. Jones*, 598 S.W.2d 209, 213 (Tenn. 1980), *superseded by statute as stated in State v. Shuck*, 953 S.W.2d 662, 666 (Tenn. 1997).

arise from the same criminal episode," concluded, in keeping with the plain language of the rule, that "[a] subsequent indictment is permitted after the defendant *has been tried* on the first charge" only when "the subsequent offense *is not known to the District Attorney General at the time of the return of the indictment upon which the defendant was tried,*" "the second charge is not within the jurisdiction of the same court that tried the defendant," or "there is a severance pursuant to Rule 14." *Id.* at 308 (emphasis added). In addition to this holding, the court stated in dicta,

> We do not perceive that any evil results from subsequent indictments being returned against a defendant charging him with additional offenses which are based on the same conduct or which arise from the same criminal episode upon which prior indictments have been returned; when the defendant has not been tried on any of the offenses at the time the subsequent indictments are returned.

*Id.*

This court first addressed the application of Rule 8(a) to the return of an indictment containing additional charges following the declaration of a mistrial in *State v. Luther E. Fowler. See State v. Luther E. Fowler*, No. 03C01-9207-CR-00249 (Tenn. Crim. App., Knoxville, July 27, 1993). After Fowler's November 1991 trial on a charge of felonious assault with a firearm with the intent to commit first degree murder ended in a mistrial, the grand jury returned an additional indictment charging Fowler with the aggravated assault of a different victim, which assault had arisen out of the same December 1988 incident that gave rise to the original felonious assault charge. *Id.*, slip op. at 2, 3-4. Fowler, who was later convicted of both charges, appealed.

A panel of this court concluded that "the indictment for aggravated assault years after the indictment for felonious assault" violated the terms of Rule 8(a) and dismissed the aggravated assault conviction. *Id.*, slip op. at 11. The *Luther E. Fowler* majority agreed that one purpose of Rule 8(a) was "to prevent a defendant from being subjected to separate trials for multiple offenses when the multiple offenses are based upon the same conduct or arise from the same criminal episode" but observed that "[c]learly, it is not the sole purpose, and is really the sanction for violation of the rule." *Luther E. Fowler*, slip op. at 12, 13. Special Judge Russell, writing for the majority, noted that he had "chaired the commission that drafted the rule and explanatory comment" and emphasized that the rule "was clearly meant to mandate the joinder in a single indictment of all offenses known at that time to have been committed in a single criminal episode." *Id.*, slip op. at 13. Judge Russell explained that "[t]he alternative consolidation under Rule 13 would apply to the exceptional circumstance in which the

grand jury refused to act upon one or more of the charges presented to it, but later did so in time to allow the charges to be consolidated and addressed in a single trial." *Id.*, slip op. at 13-14. The *Luther E. Fowler* court echoed the Advisory Commission comment that Rule 8(a) "is aimed at the practice by prosecuting attorneys of 'saving back' charges." *Id.*, slip op. at 14. As to the fact that Fowler's "first trial resulted in a mistrial and would have to be held again," the majority concluded that it did "not change the mandatory joinder requirement[] and allow a 'saving back' of the charge of attempted aggravated assault," stating emphatically that "[w]hether evil results flow from its breach or not, mandatory joinder of the known offenses is absolutely required and the sanction is the denial to the State of a trial upon a charge made in violation of the rule." *Luther E. Fowler*, slip op. at 14, 15.

Judge Peay dissented from that portion of the court's ruling dismissing the aggravated assault conviction, concluding "that the intent of the rules" was not "frustrated by" Fowler's conviction of aggravated assault. *Luther E. Fowler*, slip op. at 2 (Peay, J., concurring in part and dissenting in part). Judge Peay opined that because "the purpose of Rule 8 is to prevent multiple trials on charges arising from the same conduct," and because Fowler's "first trial ended with a hung jury, thereby necessitating a future trial on the original charge," the aggravated assault "charge did not result in multiple trials for this defendant" and did not, therefore, violate the terms of Rule 8(a). *Id.*, slip op. at 2-3.

This court revisited the core holding of *Luther E. Fowler*, that an intervening declaration of a mistrial could not cure the State's failure to join offenses that should have been joined under Rule 8(a), in *State v. Frank Michael Vukelich*. In that case, Vukelich was originally charged in January 1998 with three counts of money-laundering and one count of conspiracy to deliver over 700 pounds of marijuana between February 1988 and December 1996. *See State v. Frank Michael Vukelich*, No. M1999-00618-CCA-R3-CD, slip op. at 5 (Tenn. Crim. App, Nashville, Sept. 11, 2001). A superseding indictment charged Vukelich with six counts of money-laundering and one count of conspiracy to deliver over 700 pounds of marijuana between February 1988 and December 1996. A second superseding indictment returned in July 1998 charged Vukelich with six money-laundering offenses, one count of conspiracy to deliver over 700 pounds of marijuana between November 1989 and December 1996, and one count of conspiracy to deliver over 70 pounds of marijuana between February 1988 and October 1989. The trial court dismissed as barred by the statute of limitations that count charging a conspiracy spanning February 1988 to October 1989. The case then went to trial on the remaining seven counts but ultimately ended in a mistrial when the jury could not agree on a verdict. *Id.*

Following the mistrial, the State obtained a third superseding indictment that "attempt[ed] to cure the statute of limitations problem" in the second superseding indictment and that added four new counts of money-laundering based upon testimony elicited during Vukelich's first trial. *See id.* After the trial court granted Vukelich's motion to dismiss the first count of the third superseding indictment, the court granted the State's motion to consolidate count one from the second superseding indictment with the remaining charges in the third superseding indictment, and the case proceeded to trial on a final indictment that contained "count one of the second super[s]eding indictment and counts two through nine of the third super[s]eding indictment." *Id.*

The jury convicted Vukelich of the conspiracy charge and all but one of the money laundering offenses, including all of the money laundering charges that had been added after the first trial ended in a mistrial. The trial court later dismissed the four money laundering counts that had been added after the first trial on grounds "that the addition of counts following a mistrial violated Rule 8 of the Tennessee Rules of Criminal Procedure." *Id.*, slip op. at 6.

Vukelich appealed, claiming, among other things, that the addition of the four money laundering charges following the declaration of a mistrial had prejudiced the entire case "because the jury was presented with a much larger indictment and was thus more likely to convict." *Id.*, slip op. at 7. He argued that dismissal of only those charges was an insufficient remedy. The *Frank Michael Vukelich* panel noted this court's inconsistency "in defining the scope of" Rule 8(a), citing the rulings in *King* and *Luther E. Fowler*. *Id.*, slip op. at 10. In an attempt to clarify the scope of the rule, the panel pointed to the supreme court's "adoption" of *King*'s dicta in *State v. Carruthers*. *Id.*, slip op. at 11 (citing *State v. Carruthers*, 35 S.W.3d 516, 573 (Tenn. 2000) (appendix)). Relying on that adoption, the panel identified prevention of multiple trials as the sole purpose of Rule 8(a), rejected the holding in *Luther E. Fowler*, and concluded that "[f]ollowing a mistrial where a new trial on the original charges will be held in any event, we do not believe Rule 8 is implicated." *See id.*

*Carruthers*, like *King*, did not involve the addition of charges following the grant of a mistrial. Carruthers was charged via a March 1994 indictment with three counts of first degree murder. Carruthers was originally to be tried on those charges in February 1995, but, "due mainly to Carruthers' conduct regarding counsel, the trial was eventually continued several times until the Spring of 1996." *Carruthers*, 35 S.W.3d at 572 (appendix). In the meantime, a November 1995 indictment added charges of three counts of especially aggravated kidnapping and one count of especially aggravated robbery that arose from the same criminal episode and involved the same three victims. Carruthers was eventually convicted of all charges.

-10-

On appeal, Carruthers argued that the State should have been forced to "elect" between the two indictments rather than allowed to proceed on both at the same trial. *Id.* Our supreme court stated that "Carruthers' argument ignores the basic premise behind" Rule 8, which was, according to the court, "to promote efficient administration of justice and to protect the rights of the accused." *Id.* at 573. With this "basic premise" in mind, the court, citing *King*, concluded that Rule 8 "clearly permits a subsequently returned indictment to be joined with a previous indictment where the alleged offenses relate to the same criminal episode." *Id.* The court was careful to observe that "[t]his practice, however, does have certain limitations which, as the comments note, safeguard an accused against prosecutorial abuse." *Id.* Specifically, the court stated that "a prosecutor cannot simply decide to 'save' charges on other offenses arising out of the same conduct until after a trial is had on the original charges" because "this would result in multiple trials and prejudice the defendant," a concern that was "not present in the case at hand because the subsequent indictments were returned well before the start of trial." *Id.* The court concluded that dismissing the three murder charges, Carruthers' desired relief, "would result in the non-prosecution of three murder charges," a "type of windfall . . . not contemplated by the drafters of the Rules." *Id.*

Importantly, the procedural posture of both *Carruthers* and *King* vis-à-vis consolidation of the charges was markedly different from the procedural posture of *Frank Michael Vukelich* and *Luther E. Fowler*, a fact not addressed by the *Frank Michael Vukelich* panel. Neither Carruthers nor King had yet been tried on any offense when the State sought additional indictments. Consequently, there was no danger of the State's "saving back." It makes sense, then, that those opinions would have concentrated on the "prevention of multiple trials" purpose of Rule 8(a). The commentary about what might result from factual scenarios different from those presented in those cases is, in consequence, best understood as dicta.

Additionally, in reaching its conclusion that the intervening declaration of a mistrial did not prevent the State's adding the new money laundering charges, the *Frank Michael Vukelich* court failed to consider whether the additional charges met all of the criteria for mandatory joinder under the terms of Rule 8(a) when, as the court repeatedly pointed out, the additional charges resulted specifically from testimony adduced at Vukelich's first trial. The court explained, as proof that the additional charges did not result from prosecutorial vindictiveness:

> After the first trial, Assistant District Attorney John Zimmerman filed an affidavit in which he claimed that, although he had knowledge of Keith Schumacher's allegations prior to the first trial, he believed that he could not prosecute [Vukelich] solely on the basis of Mr. Schumacher's

-11-

> testimony, because Mr. Schumacher was an accomplice whose testimony could not be corroborated. During cross-examination of Mr. Schumacher, however, Mr. Schumacher revealed certain details that he had not previously revealed before. Those details led to further investigation that, in turn, led to the new money laundering counts. Investigating Officer Ed Rigsby filed a similar affidavit that detailed this resulting investigation.

*Frank Michael Vukelich*, slip op. at 9. The *Frank Michael Vukelich* panel did not analyze whether these facts removed the case from within the purview of Rule 8(a) and instead jumped directly to the question of the impact of the fact that the first trial ended in a mistrial.

In *State v. Baird*, a published case filed the same year as *Frank Michael Vukelich*, this court, addressing the question of mandatory joinder, concluded that "[t]he policy behind Rule 8(a) is to avoid piecemeal litigation *and* to disallow the 'saving back' of charges arising from the same conduct or same criminal episode." *Baird*, 88 S.W.3d at 621 (emphasis added). The grand jury charged Baird and his co-defendants via a June 1999 indictment with aggravated gambling promotion from August through December 1998. The defendants pleaded guilty to those charges on October 18, 1999, and were subsequently charged via a March 2000 indictment with aggravated gambling promotion from January through June 1999. The trial court dismissed the second indictment on grounds that it violated the terms of Rule 8(a). *See Baird*, 88 S.W.3d at 618. Applying a de novo standard of review, this court affirmed the ruling of the trial court dismissing the charges in the second indictment as violative of Rule 8(a).

This court returned to the idea that the purpose of Rule 8(a) was two-fold in *State v. Cedric Johnson*, and concluded "that the *Luther E. Fowler* case provides the clearest guidance in applying Rule 8(a) because it provides a bright line rule for determining whether offenses based on the same conduct or arising out of the same criminal episode should be joined." *State v. Cedric Johnson*, No. W2008-01593-CCA-R3-CD, slip op. at 7 (Tenn. Crim. App., Jackson, Nov. 30, 2009), *rev'd by Johnson*, 342 S.W.3d at 470. The *Cedric Johnson* majority observed that "even when there is no unfair 'saving back' of charges, the prosecutor's awareness of offenses arising from the same criminal episode can trigger the mandatory joinder rule." *Id.* (citing *State v. Dominy*, 67 S.W.3d 822, 825 (Tenn. Crim. App. 2001)).

Notably, the *Cedric Johnson* majority, like the panel in *Baird*, reviewed de novo the trial court's application of Rule 8(a) to the facts in that case. *Id.* The *Frank Michael Vukelich* panel employed an abuse of discretion standard of review to its

-12-

consideration of the question of mandatory joinder. As discussed above, abuse of discretion is not the appropriate standard of review for questions of mandatory joinder. *See Johnson*, 342 S.W.3d at 471.

Our supreme court granted the State's application for permission to appeal in *Cedric Johnson* on May 11, 2010. While that case was pending in the supreme court, this court released its decision in *State v. Michael Hilliard*, wherein the panel applied an abuse of discretion standard of review, cited with approval the reasoning in *Frank Michael Vukelich*, and concluded "that this court's holding in *Fowler* is not supported by subsequent case law and . . . decline[d] to follow it." *State v. Michael Hilliard*, No. W2008-02813-CCA-R3-CD, slip op. 15-18 (Tenn. Crim. App., Jackson, Nov. 1, 2010).

Although the case did not involve the application of Rule 8(a), the State relied on *Frank Michael Vukelich* in *State v. David Neal Davis* to defend its obtaining a superseding indictment charging Davis with rape of a child after his trial on "four counts of aggravated sexual battery and one count of attempted aggravated sexual battery" ended in a mistrial. During the first trial, the victim testified for the first time that Davis had penetrated her vagina with his finger, and Davis moved for a mistrial on grounds that the testimony of penetration was unfairly prejudicial. *See State v. David Neal Davis*, No. M2009-00691-CCA-R3-CD, slip op. at 7-8 (Tenn. Crim. App., Nashville, Apr. 19, 2011). The State warned that it would seek a new indictment for rape of a child based upon the new testimony should the trial court grant Davis's motion. The trial court granted the motion, finding that Davis "was 'definitely prejudiced' by the testimony" of penetration. *Id.*, slip op. at 8. Following the grant of a mistrial, the State obtained a superseding indictment that charged Davis with two counts of rape of a child, nine counts of aggravated sexual battery, one count of solicitation of a minor, and one count of attempted sexual battery. Davis challenged the new indictment on double jeopardy grounds, but the trial court allowed the case to proceed.

On appeal, the panel affirmed the decision of the trial court, observing, "It was the victim's testimony at the first trial which provided the basis for the subsequent indictment on additional and greater charges. Similar to the facts in *Vukelich*, the trial in this case was not complete, and the subsequent charges were based on testimony from the first trial." *Id.*, slip op. at 11. The panel also observed that, when the trial court granted Davis's motion for a mistrial, "[t]he trial had barely begun," with only a single witness, the victim, having testified only briefly. *Id.*

In May 2011, the supreme court released its opinion in *Johnson*. The *Johnson* court cited with approval both *Baird* and *Luther E. Fowler* for the proposition that Rule 8(a) has more than one purpose: "One of the purposes of the mandatory joinder requirements in Tenn. R. Crim. P. 8(a) is to stop the practice by some prosecuting

-13-

attorneys of 'saving back' charges because this practice necessitates multiple trials and adversely affects discovery, plea bargaining, and other pre-trial procedures." *Johnson*, 342 S.W.3d at 473 (citing *Baird*, 88 S.W.3d at 621; *Luther E. Fowler*, No. 03C01-9207-CR-00249, slip op. at 14). *Johnson* also cites *King* for the proposition that

> [t]he failure by the State to join all the 'same conduct' or 'same criminal episode' offenses in the original indictment prevents the State from subsequently prosecuting the other charges that should have been included in the original indictment unless the charges have been severed in accordance with Tenn. R. Crim. P. 14(b)(2).

*Johnson*, 342 S.W.3d at 473. The *Johnson* court made no mention of either *Frank Michael Vukelich* or *Michael Hilliard*.

This court next visited the issue of successive trials for offenses that should have been consolidated under the terms of Rule 8(a) in *State v. Brandon Churchman*. In that case, Churchman was charged in one indictment with carjacking and in a second indictment with a bevy of crimes related to a drive-by shooting that occurred shortly after the carjacking and that was orchestrated from the car stolen during the carjacking. *See Brandon Churchman*, slip op. at 3. Churchman, who was aware that the two indictments were pending, entered an open plea of guilty to the carjacking charge in the first indictment. When the State attempted to bring the second indictment to trial, Churchman argued that those charges were barred from prosecution by the terms of Rule 8(a). This court, pointing to evidence in the record that Churchman had entered his guilty plea for tactical reasons in an attempt to cut off prosecution of the second indictment, concluded that Churchman had waived his claim under the circumstances in that case. *Brandon Churchman*, slip op. at 11. We observed that "the failure to consolidate cannot be attributed to the State" and that "[p]reventing subsequent prosecution on a second indictment of which the defendant was aware at the time of the guilty plea would amount to the 'type of windfall [which] was not contemplated by the drafters of the Rules.'" *Brandon Churchman*, slip op. at 11 (citing *Carruthers*, 35 S.W.3d at 573 (appendix)).

In 2015, this court was again asked to conclude that "when a mistrial necessitates a new trial, the concern of 'holding back' from Rule 8 is not implicated and new charges are permissible." *See State v. Twanna Blair*, No. E2014-01377-CCA-R3-CD, slip op. at 13 (Tenn. Crim. App., Knoxville, July 9, 2015). In *Twanna Blair*, the trial court "declared a mistrial only for the lesser included offense of facilitation of felony murder and grant[ed] judgments of acquittals for felony murder and second degree murder." *Id.* Blair was later indicted not "for the same offense that resulted in a mistrial" but under "a different theory of facilitation of felony murder." *Id.* The *Twanna Blair*

-14-

panel noted the continuing inconsistency by this court on this issue but did not endeavor to "determine which of these analyses are correct," concluding that "*Fowler*, *Vukelich*, and *Hilliard*" were distinguishable because a mistrial had not been declared on all counts in Blair's case. The panel reasoned that the grant of a mistrial had "restored" Fowler, Vukelich, and Hilliard "to the same position as . . . before trial, when additional indictments are permitted," such that they were "not required to endure separate trials for the same criminal episode." *Id.* Unlike those defendants, Blair was faced with "a separate trial on charges that were not part of the mistrial and that were a part of the same criminal episode as the felony murder charges for which she was acquitted." *Id.* In consequence, the *Twanna Blair* panel concluded that "the re-indictment for conspiracy to commit first degree murder" was "precisely the 'saving back' that Rule 8 is intended to prevent," explaining,

> The offenses of felony murder and conspiracy to commit first degree murder were parts of the same common scheme or plan: to rob and murder the victims. The State was acutely aware of the conspiracy to commit first degree murder charge at the time of the defendant's first trial. That offense was consolidated with the offenses in indictment No. M-08-455, and the trial court required the State to select the indictments that it wished to prosecute at trial. Rather than prosecuting the defendant for both felony murder and conspiracy to commit first degree murder, the State chose to proceed to trial only on the charge of felony murder. Now, after a partial acquittal, the State is attempting to prosecute the defendant on a charge that it deliberately declined to prosecute at her first trial. The effect of this prosecution would be to subject the defendant to a separate criminal trial for multiple offenses that were mandatorily consolidated, a result that Rule 8(a)(2) expressly prohibits. Therefore, we conclude that the trial court properly found that Rule 8 precludes prosecution of the defendant for the charges of conspiracy to commit first degree premeditated murder.

*Id.*

Most recently, this court revisited the issue of the propriety of adding charges following the grant of a mistrial in *State v. Danielle Chandria Jensen*. Jensen was originally charged in the Putnam County General Sessions Court with misdemeanor theft, simple assault, and criminal trespass as a result of an incident inside a Walmart store. *See State v. Danielle Chandria Jensen*, No. M2016-01553-CCA-R10-CD, slip op.

-15-

at 1-2 (Tenn. Crim. App., Nashville, Aug. 25, 2017). After Jensen waived her right to a preliminary hearing and agreed that the charges should be bound over to the grand jury, the assistant attorney general assigned to the case moved "the Putnam County Criminal Court to enter an order of nolle prosequi as to the criminal trespass charge" and indicated that the State intended to prosecute "Jensen only for the primary charges of theft and assault and would not be prosecuting her for the secondary charge of criminal trespass." *Danielle Chandria Jensen*, slip op. at 2. Following the entry of an order of nolle prosequi on the criminal trespass charge on April 28, 2015, "the Putnam County Grand Jury returned an indictment charging Jensen with one count of theft of property valued at $500 or less and one count of assault, which was consistent with the charges bound over from general sessions court and the order of nolle prosequi as to the criminal trespass charge." *Id.* The October 2015 trial on those charges ended in a mistrial when the jury was unable to reach a verdict, "and the case was placed on the trial court's docket for November 9, 2015." *Id.*

Before the next court date, the State obtained a superseding indictment that contained theft and assault charges identical to those in the first indictment and a new Class D felony charge of burglary. The State alleged that Jensen had committed burglary by entering the Walmart store when she knew she had been permanently banned from the store. Jensen moved the trial court to dismiss the burglary charge on grounds that it amounted to prosecutorial vindictiveness and that it violated due process principles. The trial court granted Jensen's motion, finding that although "'the State has answered by demonstrating that its decision to seek increased charges was not motivated by vindictiveness,'" "'the State's lack of due diligence to properly indict and/or seek a superseding indictment prior to [the] trial resulting in mistrial requires a dismissal of Count 1[, the burglary count,] of the superseding indictment.'" *Danielle Chandria Jensen*, slip op. at 11 (alteration in original). This court granted the State's application for extraordinary appeal to consider the propriety of the dismissal of the burglary charge.

On appeal, the State cited *Frank Michael Vukelich* "for the proposition that charging additional crimes following a mistrial does not, by itself, create a presumption of prosecutorial vindictiveness and that even if it did, the filing of an affidavit showing that the new charges were not motivated by animosity rebuts this presumption." The *Danielle Chandria Jensen* panel concluded "that *Frank Michael Vukelich* is easily distinguishable from the present case because the prosecutor in Jensen's case never acquired any new evidence at trial or after the mistrial that necessitated charging her with burglary." *Id.*, slip op. at 10. The panel observed that although the prosecutor was aware that Jensen had been banned from Walmart prior to the first trial, he dismissed the criminal trespass charge, "never requested a continuance in order to pursue a superseding indictment charging burglary," and instead elected to proceed solely on the charges of theft and assault. *Id.* Ultimately, the panel determined that "the prosecutor's decision to

-16-

charge Jensen with burglary on these facts violated due process" and "that *Frank Michael Vukelich* is not persuasive because no new evidence justified the burglary charge in Jensen's case." *Id.*, slip op. at 11. Importantly, the *Danielle Chandria Jenson* panel concluded that "[b]ecause Jensen's first trial progressed to the jury deliberation stage before ending in a hung jury and mistrial," "the prosecutor's change in the charging decision" was most appropriately treated as "occurring during the post-trial stage." *Id.*, slip op. at 12.

Despite the inconsistency in the cases issued by this court, it appears clear that Rule 8(a) does not bar the addition of charges following a mistrial when those charges arise from testimony adduced during the first trial. In our view, this reasoning is sound given the plain language of the rule, which requires joinder of offenses that are known to the prosecutor at the time of the indictment. *See* Tenn. R. Crim. P. 8(a). When testimony at trial indicates that the defendant has committed crimes for which he has not been charged and the trial ultimately ends in a mistrial, Rule 8(a) would not prevent the addition of charges based upon that testimony unless the prosecutor was aware of it prior to trial.

Unlike *Frank Michael Vukelich* and *David Neal Davis*, the present case is not a case where the prosecutor only became aware of the salient facts underlying the charge of criminal exposure to HIV during the first trial. Not only was the State aware of the defendant's HIV status at the time of the first trial on the aggravated rape charge, the State had already obtained an indictment charging the defendant with criminally exposing the victim to HIV during the same sexual encounter that gave rise to the aggravated rape charge. The assistant district attorney general who conducted the aggravated rape trial acknowledged that she was aware of the indictment and actively elected not to pursue consolidation of the indictments prior to the first trial. The State's decision to forgo prosecution of the criminal exposure to HIV indictment is more akin to the addition of the burglary charge in *Danielle Chandria Jensen*. In our view, the State has engaged in the very type of "saving back" prohibited by Rule 8(a). To allow the State to proceed with consolidation under these circumstances solely because the defendant's first trial ended in a mistrial would thwart the stated purpose of the rule.

Additionally, the record contains no evidence that the defendant, like Churchman, deliberately elected not to seek consolidation of the indictments in an effort to block later prosecution of the HIV charge. *See Brandon Churchman*, slip op. at 11.

Under these circumstances, we conclude that the trial court erred by permitting the State to consolidate the indictments following the grant of a mistrial during the first trial. Because Rule 8(a) required that the State try the charges together and because the State elected to proceed to trial initially only on the charge of aggravated

-17-

rape, we vacate the defendant's conviction of criminal exposure to HIV and dismiss the indictment.

*Severance*

The defendant also claims that the trial court erred by refusing to grant his motion to sever the offenses, arguing that his ability to present a defense was hampered by the consolidation of the indictments.

Regardless whether the joinder of offenses was mandatory or permissive, the defendant may file for a severance of offenses pursuant to Tennessee Rule of Criminal Procedure 14. In cases of mandatory joinder, when the defendant asks for a severance prior to trial, "the court shall grant a severance of offenses . . . when the court finds a severance appropriate to promote a fair determination of the defendant's guilt or innocence of each offense." Tenn. R. Crim. P. 14(b)(2). We review the propriety of the trial court's decision regarding the severance of charges for abuse of discretion. *See State v. Garrett*, 331 S.W.3d 392, 401 (Tenn. 2011) (citing *Spicer*, 12 S.W.3d at 442); *see also Shirley*, 6 S.W.3d at 247. "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *Garrett*, 331 S.W.3d at 401 (citing *State v. Jordan*, 325 S.W.3d 1, 39 (Tenn. 2010)).

"Before a trial court may deny a severance request, it must hold a hearing." *State v. Dotson*, 254 S.W.3d 378, 387 (Tenn. 2008). Because the determination whether multiple offenses should be joined or separated for trial establishes a format for trial, the issue obviously must be presented and resolved before trial. *See Garrett*, 331 S.W.3d at 403; *see also* Tenn. R. Crim. P. 13(b) (providing that a trial court may order severance of offenses before trial); Tenn. R. Crim. P. 14(a)(1)(A) (providing that a defendant, except in the event of a later arising ground, shall move to sever offenses "before trial"). The trial court must base its decision regarding severance on "the evidence and arguments presented at the hearing," and, as a result, our review on appeal is generally limited "to that evidence, along with the trial court's findings of fact and conclusions of law." *Spicer*, 12 S.W.3d at 445; *see also Garrett*, 331 S.W.3d at 404 (where supreme court conducted its "analysis on the basis of the evidence adduced at [the d]efendant's trial instead of only the evidence adduced at the hearing" because trial court failed to hold a pretrial hearing).

Here, after the trial court consolidated the indictments over the defendant's objection, the defendant moved the court to sever the offenses under Rule 14. Neither party presented any evidence at the hearing. The defendant argued that he could not

present a defense of consent to the aggravated rape charge without admitting that he engaged in unprotected sex with the victim, which amounted to an admission of the elements of the HIV charge. The trial court found that the defendant's claim of consent "doesn't make sense," asking, "Do you think somebody is going to consent to having sex with you?" The court refused to sever the offenses:

> I don't find that a severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense. I don't find that to be true. I think it would be unfair to sever these, especially in light of the fact, like I was trying to say, if the defense [is] consent, then they're going to find out about HIV, regardless. It just only makes sense, it seems.

Implicit in the court's ruling was its conclusion that the defendant's HIV status would be relevant to assist in showing that the defendant defrauded the victim. The indictment, however, did not charge the defendant with rape by fraud.[5]

During the *Momon* colloquy, the defendant testified that he would have testified had the trial court ruled differently on his motion to exclude evidence pursuant to Tennessee Rule of Evidence 404(b). The defendant admitted that he engaged in three sex acts with the victim, but he stated that she was a prostitute to whom he paid $30 for engaging in those acts. The defendant acknowledged that he did not inform the victim of his HIV positive status. He maintained that he had used a condom during the encounter, but the condom broke.

In our view, there is merit in the defendant's assertion that consolidation of the indictments altered his ability to present his case in a way that prejudiced his defense. Notably, the trial court's remarks during the hearing on the defendant's motion to sever seemed to indicate that the court was unaware that consent could be a defense to the offense of criminal exposure to HIV. Code section 39-13-109 provides, in pertinent part:

> It is an affirmative defense to prosecution under this section, which must be proven by a preponderance of the evidence, that the person exposed to HIV knew that the infected person was infected with HIV, knew that the action could result in infection with HIV, and gave advance consent to the action with that knowledge.

---

[5] As charged in this case, "[a]ggravated rape is unlawful sexual penetration of a victim by the defendant or the defendant by a victim" when "[f]orce or coercion is used to accomplish the act and the defendant is armed with a weapon." T.C.A. § 39-13-502(a)(1).

T.C.A. § 39-13-109(c)(1). Moreover, the trial court concluded, without any analysis of a proper basis for admission, that evidence of the defendant's HIV status would have been relevant and admissible as proof that he committed the aggravated rape as alleged by the victim. The record does not support that conclusion. No evidence suggested that the defendant's HIV positive status made any fact of consequence with regard to the aggravated rape charge more or less likely. *See* Tenn. R. Evid. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); Tenn. R. Evid. 402 ("Evidence which is not relevant is not admissible."). Accordingly, it appears that the trial court's decision on the defendant's motion to sever was, at least in part, based upon the application of incorrect legal standards and an erroneous assessment of the proof. Accordingly, we conclude that the trial court abused its discretion by denying the defendant's motion to sever the offenses in this case.

## *II. Admission of Shelby County Health Department Records*

The defendant next contends that the trial court erred by admitting into evidence his medical records from the Shelby County Health Department pursuant to the business records exception to the hearsay rule, *see* Tenn. R. Evid. 803(6), because the State failed to satisfy the prerequisites for admission under that rule. In a related claim, he avers that the trial court erred by guiding the prosecutor during the questioning of Ms. Boyd in an attempt to help the State satisfy the requirements of Rule 803(6). The defendant also contends that the admission of records violated the Confrontation Clause. The State asserts that it complied with Rule 803(6) and that the defendant was not prejudiced by the trial court's assisting the prosecutor. The State also argues that the defendant has waived our consideration of his constitutional challenge by failing to challenge the evidence on constitutional grounds at trial.

We note first that the defendant clearly and repeatedly objected to the admission of the health department records as violative of the Confrontation Clause, and he is, therefore, entitled to plenary appellate review of his claim.

During the testimony of Ms. Boyd, the State offered into evidence records from the Shelby County Health Department that purported to establish both the defendant's positive HIV status as well as his knowledge of the same. The defendant objected, arguing that the records were hearsay. When the State claimed that the records were admissible pursuant to the business records exception to the hearsay rule, the defendant asserted that the State had failed to lay a proper foundation for admission of the records as business records. The defendant also argued that admission of the record of the results of his HIV test violated the Confrontation Clause because the technician

who performed the test was not present to testify. The trial court said, "I don't see where confrontation comes in at all," and deemed the records admissible pursuant to either the business records or medical records exception. As to whether the State had laid the proper foundation for admission of the test results via Ms. Boyd's testimony, the trial court noted that the test was conducted at the defendant's request and concluded that it was "rebut[t]able, but this is the best evidence they have."

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). "Hearsay is not admissible except as provided by these rules or otherwise by law." *Id.* 802. Tennessee Rules of Evidence 803 and 804 provide exceptions to the general rule of inadmissibility of hearsay.

As our supreme court recently confirmed, "[t]he standard of review for rulings on hearsay evidence has multiple layers." *Kendrick v. State*, 454 S.W.3d 450, 479 (Tenn. 2015), *cert. denied*, No. 14A1098, 2015 WL 5032354 (U.S. Oct. 13, 2015). The "factual and credibility findings" made by the trial court when considering whether a statement is hearsay, "are binding on a reviewing court unless the evidence in the record preponderates against them." *Id.* (citing *State v. Gilley*, 297 S.W.3d 739, 759-61 (Tenn. Crim. App. 2008)). "Once the trial court has made its factual findings, the next questions – whether the facts prove that the statement (1) was hearsay and (2) fits under one the exceptions to the hearsay rule – are questions of law subject to de novo review." *Kendrick*, 454 S.W.3d at 479 (citing *State v. Schiefelbein*, 230 S.W.3d 88, 128 (Tenn. Crim. App. 2007); *Keisling v. Keisling*, 196 S.W.3d 703, 721 (Tenn. Ct. App. 2005)); *see also Gilley*, 297 S.W.3d at 760 (stating that because "[n]o factual issue attends" the trial court's determination whether a statement is hearsay, "it necessarily is a question of law"). "If a statement is hearsay, but does not fit one of the exceptions, it is inadmissible, and the court must exclude the statement. But if a hearsay statement does fit under one of the exceptions, the trial court may not use the hearsay rule to suppress the statement." *Kendrick*, 454 S.W.3d at 479; *see also Gilley*, 297 S.W.3d at 760-61.

As indicated, the State maintained that the health department records were business records and, as such, exempt from the general rule excluding hearsay. Tennessee Rule of Evidence 803(6), generally called the "business records" exception, provides:

> Records of Regularly Conducted Activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses made at or near the time by or from information transmitted by a person with knowledge and a business duty to record or transmit if kept in

the course of a regularly conducted business activity and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness or by certification that complies with Rule 902(11) or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, profession, occupation, and calling of every kind, whether or not conducted for profit.

Tenn. R. Evid. 803(6). Thus, to be admissible under this section:

> "1. The document must be made at or near the time of the event recorded;
> 2. The person providing the information in the document must have firsthand knowledge of the recorded events or facts;
> 3. The person providing the information in the document must be under a business duty to record or transmit the information;
> 4. The business involved must have a regular practice of making such documents; and
> 5. The manner in which the information was provided or the document was prepared must not indicate that the document lacks trustworthiness."

*Arias v. Duro Standard Prod. Co.*, 303 S.W.3d 256, 263 (Tenn. 2010) (quoting *Alexander v. Inman*, 903 S.W.2d 686, 700 (Tenn. Ct. App. 1995)).

Initially, the prosecutor struggled when attempting to establish the prerequisites for the admission of the health department records as business records under 803. When the trial court first attempted to assist the prosecutor, the defendant objected. After the prosecutor began to struggle again, the trial court called the lawyers to the bench and, over the defendant's objection, instructed the prosecutor to ask the witness whether the records were "permanent and accurate." The prosecutor then asked Ms. Boyd the specific questions dictated by the trial court, and the trial court concluded that the State had satisfied the prerequisites for admission.

The defendant claims that the trial court erred by assisting the prosecutor in laying the foundation for the admission of the records. He has waived our consideration of his claim, however, by failing to support it with citation to any authority. *See* Tenn. R. App. P. 27(a)(7) (stating that the appellant's brief must contain an argument "setting forth . . . the contentions of the appellant with respect to the issues presented, and the reasons therefor . . . with citations to the authorities . . . relied on"); Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court.").

In our view, the health department records qualified for admission under the business records exception to the hearsay rule. Although the State struggled initially, the prosecutor eventually satisfied the requirements for admission of the records under Rule 803(6).

We next consider the defendant's claim that admission of the health department records, and the HIV test results in particular, violated his Confrontation Clause rights.

The Sixth Amendment to the federal constitution and article I, section 9 of the Tennessee Constitution afford the criminal accused the right to confront the witnesses against him. *See* U.S. Const. amend. VI; Tenn. Const. art. I, § 9. Although the provisions are not coterminous, our supreme court has "expressly adopted and applied the same analysis used to evaluate claims based on the Confrontation Clause of the Sixth Amendment." *State v. Dotson*, 450 S.W.3d 1, 62 (Tenn. 2014) (citing *State v. Parker*, 350 S.W.3d 883, 898 (Tenn. 2011); *State v. Franklin*, 308 S.W.3d 799, 809-10 (Tenn. 2010); *State v. Cannon*, 254 S.W.3d 287, 301 (Tenn. 2008); *State v. Lewis*, 235 S.W.3d 136, 145 (Tenn. 2007)). In *Crawford v. Washington*, the United States Supreme Court departed from decades-long precedent and held for the first time that "[w]here testimonial evidence is at issue . . . the Sixth Amendment demands . . . unavailability and a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 68 (2004). "Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law." *Id.* Because the Confrontation Clause does not bar nontestimonial hearsay, *see Davis v. Washington*, 547 U.S. 813, 823-24 (2006); *Whorton v. Bockting*, 549 U.S. 406, 420 (2007), "the threshold question in every case where the Confrontation Clause is relied upon as a bar to the admission of an out-of-court statement is whether the challenged statement is testimonial." *Dotson*, 450 S.W.3d at 63 (citing *Cannon*, 254 S.W.3d at 301).

The *Crawford* court identified, for illustrative purposes, a "core class of 'testimonial' statements": "'ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant

-23-

was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially'"; "'extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions'"; and "'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" *Crawford*, 541 U.S. at 51-52. Similarly, the court observed that some "statements . . . by their nature were not testimonial," including, among other things, "business records." *Id.*; *Dotson*, 450 S.W.3d at 64. The Supreme Court has also recognized that "medical reports created for treatment purposes . . . would not be testimonial." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 312 n.2 (2009); *see also Cannon*, 254 S.W.3d at 303 (statements in medical records given for the primary purpose of medical diagnosis and treatment are nontestimonial). Thus, statements that are properly categorized as business records or medical records are nontestimonial, and the Confrontation Clause has no application to their admission into evidence. *Cannon*, 254 S.W.3d at 303.

For those statements that are not easily classified as nontestimonial, our supreme court has concluded that "'a statement is testimonial at least when it passes the basic evidentiary purpose test plus either the . . . targeted accusation requirement'" adopted by the plurality of the Supreme Court in *Williams v. Illinois*, 567 U.S. 50, 132 S. Ct. 2221 (2012), or the "'formality criterion'" espoused by Justice Thomas in his concurring opinion in *Williams*, stating that "'[o]therwise put, if *Williams* does have precedential value . . . an out-of-court statement is testimonial . . . if its primary purpose is evidentiary and it is either a targeted accusation or sufficiently formal in character.'" *Dotson*, 450 S.W.3d at 69 (quoting *Young v. United States*, 63 A.3d 1033, 1043-44 (D.C. 2013)).

We have no difficulty concluding that admission of the health department records did not violate the defendant's constitutional rights. The records were a combination of medical records relevant to the defendant's diagnosis and treatment and business records "created for the administration of" the health department's affairs. *See Melendez-Diaz*, 557 U.S. at 324. To be sure, nothing suggests that the records were created "for the purpose of establishing or proving some fact at trial," and, in consequence, "they are not testimonial." *Id.* Because the records were not testimonial, the Confrontation Clause does not bar their admission.

*III. Sufficiency*

Finally, the defendant asserts that evidence was insufficient to support his conviction because the State failed to establish that the defendant engaged in intimate

contact with the victim in a manner that presented a significant risk of his transmitting HIV. The State contends that the evidence was sufficient.

We review the defendant's claim of insufficient evidence mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Id.* Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

Tennessee Code Annotated section 39-13-109 provides, in pertinent part, as follows:

(a) A person commits the offense of criminal exposure of another to human immunodeficiency virus (HIV), to hepatitis B virus (HBV), or to hepatitis C virus (HCV) when, knowing that the person is infected with HIV, with HBV, or with HCV, the person knowingly:

(1) Engages in intimate contact with another;

. . . .

(b) As used in this section:

. . . .

(2) "Intimate contact with another" means the exposure of the body of one person to a bodily fluid of another person in any manner that presents a significant risk of HIV, HBV or HCV transmission.

-25-

T.C.A. § 39-13-109(a)(1), (b)(2). "To support a conviction under this statute, the actual transmission of HIV is not required, only the 'exposure' of bodily fluids in such a way that poses a significant risk of transmission." *State v. Hogg*, 448 S.W.3d 877, 887 (Tenn. 2014) (quoting T.C.A. § 39-13-109(d)). Our supreme court has interpreted "'exposure' . . . to mean that 'a defendant subjected a victim to risk of contact with bodily fluids in a manner that would present a significant risk of HIV transmission.'" *Hogg* 448 S.W.3d at 887 (quoting *State v. Bonds*, 189 S.W.3d 249, 258 (Tenn. Crim. App. 2005)). The supreme court has also held "that in the context of the criminal exposure to HIV statute, 'significant risk' requires a chance of HIV transmission that is more definite than a faint, speculative risk, as shown by expert medical proof." *Hogg*, 448 S.W.3d at 888-89.

The evidence adduced at trial, in the light most favorable to the State, established that the defendant and the victim engaged in both oral and vaginal sex. Forensic testing confirmed the presence of the defendant's semen in the victim's vagina and mouth. In our view, this evidence was sufficient to support the defendant's conviction. Because "[i]t is 'generally known' that HIV is 'spread by the transfer of bodily fluids such as blood, genital secretions, and perhaps saliva,'" *Bonds*, 189 S.W.3d at 260 (quoting Alan Stephens, Annotation, *Transmission or Risk of Transmission of Human Immunodeficiency Virus (HIV) or Acquired Immunodeficiency Syndrome (AIDS) as Basis for Prosecution or Sentencing in Criminal or Military Discipline Case*, 13 A.L.R.5th 628 § 2 (2004)), the act of penetration, whether vaginal or oral, "is itself sufficient evidence of 'exposure of the body of one person to a bodily fluid of another person in [a] manner that presents a significant risk of HIV transmission.'" *Bonds*, 189 S.W.3d at 260 (quoting T.C.A. § 39-13-109(b)(2)).

## IV. Conclusion

The separate indictments charging the defendant with aggravated rape and criminal exposure to HIV should have been consolidated prior to the defendant's first trial. Because they were not, and because consolidation was mandatory under Rule 8(a), the defendant's conviction of criminal exposure to HIV must be vacated, and the charge dismissed.

_____
JAMES CURWOOD WITT, JR., JUDGE